## Case No. 13,389.

### STEVELIE v. READ.

[2 Wash. C. C. 274.] [1]

Circuit Court, D. Pennsylvania.    Oct. Term, 1808.

JUDGMENT—EFFECT OF MISNOMER—PARTIES.

1. A record of a judgment obtained by the plaintiff in North Carolina, against James Reed, administrator de bonis non of Bartow, was properly given in evidence to the jury; parol evidence having proved that the defendant, Joseph Read, had attended the taking of depositions in the case while depending in the court of North Carolina, and that notice of this suit was given to him.

[Cited in Pond v. Ennis, 69 Ill. 347.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

2. The rule of law is, that a judgment is inadmissible in evidence, except between the same parties, or those in privity with them, and for the same cause of action.

3. A mere misnomer, is not sufficient to exclude the record of such a judgment from being given in evidence, if, in point of fact, the party appeared by a wrong name, and instead of pleading the misnomer, went to issue on other points, and judgment was given against him.

[Cited in Wood v. Le Baron, 8 Cush. 474.]

4. An averment, in the action on the judgment that he is the same person, if made out by proof, will fix the liability of the defendant for the judgment.

[5. Cited in Allen v. Blunt, Case No. 217, to the general rule that the admission of new testimony is ground for new trial.]

Action for money had and received. The case was as follows. An action was instituted in the state court of North Carolina, in the name of Thomas Bartow, against J. Goodman in September 1793, for the recovery of a sum of money due, in which suit the plaintiff was bail for Goodman. In March 1794, judgment was rendered for —— dollars. In September 1798, scire facias, reciting the death of Bartow, and the appointment of executors, issued in the names of the executors, for reviving the said judgment, and the same was revived. Bartow died in January 1793, before the action was brought, which Stevelie, the bail, pleaded to a scire facias brought by the executors, in order to charge him with the debt. This scire facias issued in September 1799; the plea was overruled on demurrer, and in December 1800, judgment was given against the bail. Execution issued in March 1801, against Stevelie, which was returned, levied and satisfied. The executors named by Bartow, resigned the execution of his will, and Joseph Read, the defendant, was, on the 4th of January 1798, appointed administrator de bonis non, with the will annexed. In September 1801, Stevelie sued out a writ of error, as administrator of Goodman, who was then dead, to reverse the original judgment against Goodman, assigning for error the death of Bartow before judgment was rendered. The executors of Bartow pleaded in nullo est erratum. The jury found the death of Bartow in February 1793, and in September 1802, the original judgment was reversed, and a writ of restitution awarded. The writ was served on G. Hawser, the former agent of Bartow, who stated, that his powers ceased with the death of Bartow, and that he had received nothing on the execution, and had nothing to restore. The writ was dismissed. On the motion to amerce the sheriff for the above return, it appeared, that on the 22d of February 1798, Joseph Read, administrator with the will annexed of Bartow, appointed G. Shober, his attorney, to sue for, demand, and recover all sums due to him as administrator, &c., by J. Goodman; and a receipt was produced, given by Joseph Read, for six

hundred and thirty-six dollars, received from said Shober, which, with one hundred dollars wrongfully detained by Williams, the attorney, and thirty-four dollars, Shober's commission, was in full of the debt due by Goodman to Bartow's estate. This was dated in May 1803; also a letter from G. Haga, one of Bartow's executors, dated the 12th of February 1798, to G. Shober, mentioning the resignation of the executor, and the appointment of Read, as administrator, from whom he, Shober, was to receive orders in future. On the 3d of July 1804, a notice was given by the plaintiff to the defendant, Joseph Read, that, on such a day, he should move the superior court in North Carolina, for a writ of error, to reverse the judgment obtained in the name of the executor of Bartow against him, the said Stevelie, as bail for Goodman; the service of which notice was proved. Agreeably to notice, the writ of error was moved for in September 1804, and granted against James Reed, administrator de bonis non of Thomas Bartow, to reverse the judgment against said Stevelie, as bail of Goodman. The death of Bartow was assigned as the principal error. James Reed, administrator de bonis non of Bartow, appeared by E. Williams, his attorney, and pleaded in nullo est erratum. The fact assigned, being found for the plaintiff in error, judgment against the plaintiff as bail, was reversed in March 1806.

The jury, upon the above evidence given in this cause, found a verdict for the plaintiff, subject to the opinion of the court on the following point reserved, viz., whether the record of Stevelie v. Read, administrator, was properly admitted in evidence to the jury, parol evidence having been given, that the defendant, Joseph Read, attended the taking of depositions, and the examination of witnesses in the suit, to reverse the original judgment against Goodman, on notice given to him, prout the notice, and that notice was given to him, (prout notice and affidavit,) that a writ of error would be brought to reverse the judgment against the plaintiff, as special bail; and if the said record was not properly admitted, then whether this action can be supported upon the above parol proof, and the other written evidence in the cause. If the opinion of the court is in the affirmative, on both or either of these points, judgment to be entered for the plaintiff; if in the negative on both points, judgment to be entered as in case of a nonsuit.

WASHINGTON, Circuit Justice. The first question to be considered is, whether the record in the suit of Stevelie against James Reed, was properly admitted in evidence in this suit, against Joseph Read, administrator of Thomas Bartow? The rule of law is clear, that a judgment is inadmissible in evidence, except between the same parties, or those in privity with them, and for the same cause of action; and unless it appear, that the parties to the record offered in evidence, be in fact the same as those to the suit in which that record is offered, it may be laid down, as a general rule, that such evidence is inadmissible. We say, as a general rule, in order to avoid giving a decided opinion, whether if a judgment be reversed and made void, though a wrong person be made party to the writ of error, such reversal may or may not be given in evidence, in an action against the person who actually received the money, in virtue of the judgment which was reversed. It is not necessary now to decide that question; but we shall inquire whether, in point of fact, Joseph Read, the present defendant, was or was not a party to the proceedings, in which the judgment against the plaintiff was reversed. It was admitted, in argument, that the mere misnomer is not sufficient to prevent the evidence from being admitted, if, in point of fact, the party appeared by a wrong name, and instead of taking advantage of the misnomer, by a plea in abatement, went to issue upon other points, and judgment was given for or against him. The averment in the second action, that he is the same person, if made out in proof, will fix his liability to satisfy the first judgment. Now, what are the facts in this case? In January 1798, the defendant was appointed administrator of Bartow; the next month he appointed G. Shober, of North Carolina, his attorney, to demand and sue for this identical debt due from Goodman. In 1801, he was apprized of the writ of error brought by Stevelie, to reverse the original judgment obtained against Goodman, and attended (nominally, it is true, as attorney, but in fact in his proper person, as representing Bartow,) the taking of depositions in that suit. It is worthy of observation, that the same person who is mentioned in the defendant's receipt, as the attorney who had retained too much for his fee, of the money recovered and received from the plaintiff on the execution against him, appeared to this writ of error, and pleaded in nullo est erratum. This judgment being reversed, the plaintiff, in July, 1801, gave notice to the defendant, that a writ of error would be moved for, to reverse the judgment against him as bail. The writ was granted, and we find an appearance entered for the administrator de bonis non of Thomas Bartow, but misnamed James, instead of Joseph, and a regular plea put in. Now, can there remain a doubt, but that this evidence fully supports the averment that Joseph Read, the defendant in this suit, and James Reed, the defendant in the writ of error, are one and the same? The surname is the same, the description of character is the same, but the Christian name is mistaken. Is it conceivable, that with full notice to the defendant of both writs of error, and with an attorney in fact in North Carolina, an appearance would have been entered, ex-

cept by his orders, or those of his attorney? That without such orders, any person unauthorized, would have appeared; or that knowing of the proceedings, the defendant would so far neglect his duty, as not to attend to and defend that suit, particularly as he had previously received the money? It is impossible, that against such a mass of proof we can doubt as to the fact. If so, the record was properly admitted, and judgment must be rendered for the sum found by the jury.