Sayre, J.
The judgment record in the Madison county case introduced in evidence here shows that the plaintiff was described in that case as a corporation. The introduction of the judgment record is objected to because it does not show that the plaintiff therein is identical with Merchants and Miners Bank, a partnership.
*181 Oral evidence, introduced on the trial, shows that Merchants and Miners Bank, a partnership, employed a lawyer to take judgment for it in Madison county on cognovit notes against The Nelson-ville Foundry & Machine Company, and that he, by mistake described the plaintiff in that case as a corporation, and further that there is no Ohio corporation by the name of The Merchants and Miners Bank.
Should this evidence be excluded?
The averments in the petition in the Madison county case that the plaintiff was a corporation were immaterial ones. (Brady v. National Supply Co., 64 Ohio St., 267.) These are merely descriptive of the plaintiff and of no more consequence than if the plaintiff’s name in the caption read: The Merchants and Miners Bank, a corporation.
The precise question for this court then is: In a suit on a domestic judgment, where it appears that the name of the party plaintiff in the judgment sued on is not identical with the name of the party claiming to have secured the judgment, can parol evidence be received to show that the parties are, in fact, identical? A case can readily be imagined where the admission of such evidence would be absolutely necessary. If the name of the plaintiff in a suit for recovery on a judgment was exactly the same as the name of the plaintiff in the transcript of the judgment sued on, and there was an answer to the effect that they were not the same parties, parol evidence would be imperative. While the authorities are not in accord on the subject the great weight of authority sus *182 tains the rule that parol evidence is admissible to prove that the parties are identical. A list of them follows:
State, ex rel. Prescott, Jr., et al. v. Hanousek, 19 C. C., 303; Missouri Glass Co. v. Gregg, (Tex.) 16 S. W. Rep., 174; U. S. Nat. Bank of N. Y. v. Venner, 172 Mass., 449, 52 N. E. Rep., 543; Fisher, Brown & Co. v. Fielding, 67 Conn., 91, 32 L. R. A., 236; Boyden, Jr., v. Hastings, 17 Pick., 200; Morris v. The State, ex rel. Brown, 101 Ind., 560; Hollenbeck v. Stanberry & Son, 38 Ia., 325; Mobile & Montgomery Ry. Co. v. Yeates, 67 Ala., 164; James H. Barry & Co. v. Carothers, 6 Rich. Law (S. C.), 331; Stevens v. Elizee, 3 Campbell, 256; Farrar v. Fairbanks, 53 Me., 143, and Stevelie v. Read, 2 Wash. C. C., 274.
The rule is well established that where the record of a former action, pleaded as a bar or estoppel, does not show that the parties to such action were identical with the parties to the action in which it is so pleaded, this fact may be established by parol evidence. 23 Cyc., 1542.
Counsel for the receiver say that a suit to recover on á judgment presents an entirely different situation from one in which a former recovery is pleaded, but they do not point out any difference or cite any case as authority for the position that there should be a difference. It seems to us there is no difference. Both cases fall within or without the general rule that parol evidence will not be received to explain, contradict or interpret a judgment. In one case the judgment record is admitted to prove the existence of a cause of action; in the other it is admitted to prove the nonexistence of *183 a cause of action. The same record may be introduced to prove the one or the other. Since the same record can be introduced for either purpose, it follows naturally and logically that if parol evidence can be introduced to show identity of parties in one case it may in the other. Suppose Merchants and Miners Bank, a partnership, had brought another suit on the cognovit notes sued on in Madison county and had served process upon The Nelsonville Foundry & Machine Company, and the latter had answered and pleaded res adjudicatu, and offered in evidence a transcript of the judgment of the first suit, and it was objected to for the same reason that it is objected to in this suit, what difference would there be in the assumed case and the one under consideration ? If it be admitted that the transcript of the judgment would be admissible in the assumed case, and that the identity of the parties could be proven by parol evidence, what reason can be assigned for excluding such evidence in the case under consideration? We are wholly at a loss to discover any reason, and conclude that the authorities which support the position that parol evidence may be received to identify the parties in a case where a former recovery is pleaded are precisely in point in an action where it is sought to identify parties in a suit on a domestic judgment. The judgment record and the oral evidence were properly admitted.
It is contended that The Nelsonville Foundry & Machine Company did not authorize the warrants of attorney contained in the several promissory notes, and that therefore the court of common *184 pleas of Madison county did not have jurisdiction of the person of such company. It is true that the only authority extended by the directors was to make notes to cover overdrafts, except in the case of the note for $10,000 where no authority whatever was given by any positive act of the directors acting as such. However, the two notes for $1,-000 each, dated August, 1892, had been existing contracts between Merchants and Miners Bank and The Nelsonville Foundry & Machine' Company for eighteen years before they were reduced to judgment. The note dated February 6, 1897, and the one dated October 16, 1897, had been existing contracts between the same parties for thirteen years before they were reduced to judgment. During that entire time the company had paid interest on the notes. The notes executed in August, 1892, were signed by Charles A. Cable, President, and C. E. Poston, Secretary-treasurer. The note dated February 6, 1897, was signed by J. W. Jackson, President, and C. E. Poston, Secretary-treasurer. The note of October 16, 1897, was signed by C. E. Poston, Secretary-treasurer. While the knowledge acquired by Charles A. Cable, as he was one of the partnership composing Merchants and Miners Bank, as to the contents of the notes, might not have been the knowledge of the company, yet C. E. Poston, who signed all four notes and had no interest in such partnership, was secretary-treasurer, and his knowledge of the contents of the notes was the knowledge of the company. Poston was one of the officers authorized by the board of directors1 of' the corporation to execute these notes, and that matter was his especial *185 business and within the scope of his authority. Knowledge of the officers and agents of a corporation within the scope of their official capacity and agency is the knowledge of the corporation. 2 Thompson on Corporations (2 ed.), Section 1646, and The First National Bank of New Bremen v. Burns et al., 88 Ohio St., 434.
In the case of Dickinson v. Zubiate Mining Co., 106 Pac. Rep., 123, (11 Cal. App., 656), it is held:
“Through the president and secretary who executed a written agreement in a corporation’s behalf, it must be deemed to have had notice thereof, when it was made.”
“The most comprehensive rule with reference to this subject which can be stated is that notice communicated to, or knowledge acquired by, the officers or agents of corporations when acting in their official capacity or within the scope of their agency becomes notice to or knowledge of the corporation for all judicial purposes.” 10 Cyc., 1054.
Another rule equally well established is that:
“A corporation may ratify by passive acquies- ] cence, as well as by affirmative action, the unauthorized acts of its agents, and its acquiescence with knowledge, if continued for a considerable time, operates as a ratification.” Knowles et al. v. Northern Texas Traction Co., (Tex.) 121 S. W. Rep., 232. 2 Thompson on Corporations (2 ed.), Section 1407.
All four of the notes could have been taken up long ago and renewals given without the warrants of attorney, if the corporation had any desire to set right the unauthorized acts of its officers, but its acquiescence for so long a time without any *186 objection whatever deprives the corporation of the right to now say that the warrants of attorney are without its authority. To say that the terms and stipulations contained in notes which have been owed by a corporation for more than thirteen years, and on which the interest has been paid, were unknown to the board of directors as a board, especially when the president and secretary of the corporation, both of whom were directors, signed the notes, is a proposition so much at variance with the ordinary knowledge and duties of corporate officers that it ought not to receive any serious consideration. The further argument that ratification by individual directors is not a ratification by the board is a proposition which would at once destroy the doctrine of ratification by acquiescence, which is well established. Ratification by acquiescence means, ordinarily, ratifica- • tion without formal action. It means knowledge of the fact without act of any kind in relation thereto for a considerable period of time.
It is further contended that the Madison county court had no jurisdiction of the machine company because a warrant of attorney must be strictly construed, and as Merchants and Miners Bank was in fact a partnership the attorney at law who confessed the judgment in Madison county had no authority to confess a judgment in favor of The Merchants and Miners Bank, a corporation, citing Spence v. Emerine, 46 Ohio St., 433; Mansfield Savings Bank v. Post et al., 22 C. C., 644, and other cases of like import.
It will be noticed that the payee in the notes referred to is Merchants and Miners Bank. If *187 attention is directed solely to the record in the Madison county case the notes were strictly construed when judgment was entered for Merchants and Miners Bank, because it was the payee and obligee named in the notes. Whether it was a corporation or not can not be determined by the notes, because they are silent as to that matter, and as Merchants and Miners Bank must necessarily have been either a corporation or partnership, an individual or individuals doing business in that name, there is nothing in the record in that case to show that in giving judgment for Merchants and Miners Bank, a corporation, the judgment was not given in strict accord with the terms of the notes. It is only when we go outside the record of the Madison county case that any reason can be found for saying that the notes were not strictly construed and judgment given for a party who was not entitled to it. It is only when thé record in the instant case comes into view that the authority of the attorney at law who confessed the judgment can be questioned. So the whole matter is reduced finally to whether oral evidence can be received to show that the plaintiff in the Madison county judgment was identical with Merchants and Miners Bank, a partnership. If it can, as we have decided, then it at once appears that the judgment was confessed in favor of Merchants and Miners Bank, a partnership, for it was in fact the plaintiff in that suit.
The note for $10,000 was given within a month before it was reduced to judgment, and was signed: The Nelsonville Foundry & Machine Company, C. A. Cable, President,’ R. H. Jackson, *188 Secretary. The board of directors was not in session a single time in a period of almost five years prior to the appointment of a receiver for the machine company, the last meeting being April 29, 1909, and the records further show that outside of the annual meetings,.at which times they elected officers, the board of directors did not perform a single act relating to the business of the corporation after some time in 1904. R. H. Jackson, since prior to 1909, has been secretary-treas- ■ urer and general manager of the corporation, and made the following statement at the trial in the court of common pleas:
“Would you mind if I would tell you that the directors and the stockholders in their yearly meeting would say they would turn over a new leaf every year, ‘now, we will get together and we will have meetings, regular meetings, and will look after business a little bit closer and will help you out,’ and that is the last I would hear of them until the next meeting.”
But the next meeting after April 9, 1909, never came. So that for a period of almost five years prior to the appointment of the receiver on March 24, 1914, the board of directors never met. They ceased to direct the corporation and as directors became dormant. R. H. Jackson was the only officer connected with the corporation who was compensated. The business was being conducted at a loss. The directors were not interested. They, by their acquiescence, allowed the business to be conducted by Mr. Jackson, and he had entire charge of the same during the period of five years. The stockholders present at the annual meeting in *189 1906 were C. A. Cable, Fred Weymueller, representing stock of I. O. O. F., H. H. Jackson and R. H. Jackson. Those present at the annual meeting in 1907 were the same persons and C. Robbins. Those present at the annual meeting in 1908 were Cable, Robbins, Weymueller and R. H. Jackson. Those present at the annual meeting in 1909 were Cable, Robbins, H. H. and R. H. Jackson. Those present at' the annual meeting' of August 22, 1912, were Cable, Robbins, H. H. and R. H. Jackson, and two persons representing stock of the I. O. O. F. So since 1906 the stockholders who attended the annual meetings were Cable and Robbins, both interested in Merchants and Miners Bank, the two Jacksons, and representatives of the stock of I. O. O. F., and of these Cable and the two Jacksons owned five-sixths of the stock.
Nor did the stockholders hold a meeting during that five-year period, except on the one occasion, August 22, 1912, when they elected the old board of directors, being the same persons, with one exception, who did not meet during the. five-year period. So the stockholders acquiesced in the action of the directors in allowing Mr. R. H. Jackson to manage and control the business of the company.
At the time of the execution of the $10,000 note, on December 21, 1910, the directors had not met for one year and seven months, and the stockholders were allowing the general manager, Mr. R. H. Jackson, to assume and exercise the powers of the board of directors. Their attitude in the matter is clearly seen by the reelection of the same directors in 1912, with the single exception. This *190 shows that they, the stockholders, were willing that the single officer should assume the duties of the board of directors, for they knew the board of directors was such only in name.
In 2 Thompson on Corporations (2 ed.), Section 1409, it is said:
“Generally where the stockholders, by their direction or acquiescence, invest the executive officers of the company with the powers and functions of the board of directors, as a continuous and permanent arrangement, the board being entirely inactive, and the officers discharging all its duties, a transaction consummated in behalf of the corporation by such officers will be valid, though not specially authorized by any vote of the stockholders or directors.” ,
In the case of The Smead Foundry Co. v. Chesbrough, 18 C. C., 783, cited so frequently by counsel for the machine company, the fourth paragraph of the syllabus reads, in part, as follows:
“The president of a corporation has no power by virtue of his office to execute a bond and warrant of attorney for the entry of judgment by confession against the corporation. Such power is vested in the board of directors only. But the president’s authority may be enlarged beyond the powers inherent in his office by the consent and acquiescence of the directors in permitting him to take control of the business of the corporation.”
The evidence shows beyond dispute that the stockholders permitted the directors to surrender their offices to the general manager for a period of five years. The note of December 31, 1910, was executed nineteen months after the board of *191 directors ceased to meet and as a board became defunct. The act of R. H. Jackson in signing the $10,000 note was the act of the corporation. R. H. Jackson had succeeded to the power of the board of directors. They could have executed a judgment note to the bank on December 31, 1910. Hence, under the circumstances, he could. The note of December 31, 1910, was beneficial to the machine company, and it can not now say, under the circumstances as appear beyond dispute in the evidence, that the warrant of attorney contained in that note was without the authority of the company.
Does the failure to aver in the Madison county petition that the plaintiff was a partnership formed for the purpose of carrying on a trade or business in Ohio render the judgment void?
In J. H. Beers & Co. v. Gurney, 14 C. C., 82, the court held that where the defendant fails to take advantage of such failure by proper pleading the objection is waived The case under consideration, however, is different from that one, in that the judgment here in controversy was taken on confession and the defendant had no opportunity to make any' objection. However, the Madison county court of common pleas had jurisdiction of the parties and of the subject-matter, and the petition therein was such a one as could have been amended, and the proper averment made, as the record (outside the judgment record) shows that Merchants and Miners Bank was a partnership formed for the purpose of doing business in Ohio.
As said in Spoors v. Coen, 44 Ohio St., 497, 503:
“If the case presented invoked the jurisdiction of the court, and could have been perfected by amend *192 ment,. the judgment of the court thereon could not be treated as a nullity.”
An amendment could have been made showing the plaintiff had legal capacity to sue in the Madison county case. Besides, the waiver of errors in the warrant of attorney would seem to be sufficient to waive just such an error as this. We have no doubt that had the defendant joined issue on some other averment in the Madison county case, without raising any objection to the failure to aver that the plaintiff was a partnership formed for the purpose of carrying on business in Ohio, and the plaintiff had recovered a judgment, that judgment would be valid. If this is true, and the error could be waived under, such circumstances, it was waived by the language of the cognovit note.
The decree will be in accordance with this opinion.

Decree accordingly.

Walters and Merriman, JJ., concur.